# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAXSONY COISSY, | Case No. 1:24-cv-01556-KES-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION FOR FAILURE TO PROSECUTE, FAILURE TO OBEY A COURT ORDER, AND FAILURE TO STATE A CLAIM |
| v. | |
| DOER, *et al.*, | |
| Defendants. | (ECF No. 13) |
| | **FOURTEEN-DAY DEADLINE** |

**I.     Background**

Plaintiff Maxsony Coissy ("Plaintiff") is a federal prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2401 *et seq*.

On July 18, 2025, the Court screened the complaint and granted Plaintiff leave to file a first amended complaint or notice of voluntary dismissal within thirty days. (ECF No. 13.) Plaintiff was warned that failure to comply with the Court's order would result in a recommendation for dismissal of this action, with prejudice, for failure to obey a court order and failure to state a claim upon which relief may be granted. (*Id.* at 16.) The screening order was served on Plaintiff at his current address of record at Atwater U.S. Penitentiary in Atwater,

1 | California. On August 4, 2025, the Court's order was returned as "Undeliverable, Return to
2 | Sender, Refused."
3 |     The deadline for Plaintiff to respond to this Court's order has now expired, and Plaintiff
4 | has not filed a notice of change of address or otherwise communicated with the Court.

## II. Failure to State a Claim

### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### B. Plaintiff's Allegations

Plaintiff is currently housed at United States Penitentiary at Atwater ("USP Atwater"), California where the events in the complaint are alleged to have occurred. Plaintiff names the

1    following defendants: (1) J. Doer,[1] Warden, (2) The United States of America, (3) A.W. Queen,
2    (4) A.W. Sliva, (5) Captain Brasfield, (6) HSA Franks, (7) AHSA Main,[2] (8) Mailroom
3    Supervisor D. Datray, (9) Unit Manager, (10) Case Manager (11) Counselor, (12) Trust Fund,
4    Beardsly, (13) Medical, Krodic, (14) Medical, Plesenta, (15) Medical, Cota, (16) Medical, Singh,
5    (17) Medical, Indian loomis,[3] (18) Medical, Pena,[4] (19) Medical, (20) Medical, Putnam, (21)
6    Medical Jbarra, (22) Medical, Debusk.

    Plaintiff alleges violations of B.O.P. Policy, First Amendment free speech, Fifth Amendment Due Process, Eighth Amendment cruel and unusual punishment. Plaintiff alleges that USP Atwater was locked down from on or about August 9-October 9, 2024. Plaintiff was confined to his cell for 24 hours a day. During this time, the Unit Team, consisting of Plaintiff's Unit Manager Castaneda, case manager Veya and counselor Stockton were responsible to make administrative remedy forms (to include Federal Tort Claim Act forms) available to Plaintiff. Plaintiff had no way to approach the Unit Team member to request administrative remedy forms. Plaintiff sent a complaint via institutional mail to Veya, Castenda, Captain, AW ___,[5] requesting information resolution of issues and administrative remedy forms. Unit Mgr. Castenada, case manager Veya, and counselor Stockton did not provide any access to administrative remedy forms during this time period. This issue was compounded by Plaintiff being cut off from the world during the same time. This was a deliberate, planned action and a knowing violation of B.O.P Policy. A.W. Sliva, Captain Brasfield, Trust Fund Beardsly and mailroom supervisor D. Datray, HSA Franks. Violation was punitive and arbitrary.

    As a result, Plaintiff has suffered physical pain, mental anguish, emotional distress, and financial loss.

    In claim 2, Plaintiff alleges violation of B.O.P. Policy for violations of First Amendment

---

[1] Plaintiff spells this defendant's name alternatively as "Doer" and "Doerer." In any amended complaint, Plaintiff should correctly name each defendant such that the proper defendant may be served should Plaintiff state a cognizable claim.
[2] This name is unintelligible.
[3] This name is unintelligible.
[4] This name is unintelligible.
[5] Throughout the complaint, Plaintiff leaves blanks where names should appear. For purposes of screening, the Court includes the blank lines where Plaintiff did not include a name.

free speech and access to the courts, Fifth Amendment Due Process and Eighth Amendment. Plaintiff alleges violations for being "cut off all communication with the world." USP Atwater was locked down from August 9-October 9, 2024. During this time Warden J. Doerer, the United States, AW Queen, AW Sliva, Captain Brasfield, Mail Room Supervisor D. Datray, Trust Fund Beardsly and Unit Manager ____ cut Plaintiff off from the world. During this time, Plaintiff had no access to news, current events, no ability to communicate with his family or loved ones, no ability to communicate with his attorney for access to courts. All outgoing mail was held until approximately September 9 before it was sent out. From on or about August 9-October 9, 2024, J. Doerer, the United States, A.W. Queen, A.W. Sliva, Capt. Brasfield, Trust Fund Beardsly, mailroom supervisor D. Datray and Unit Mgr. Castenada did knowingly and intentionally suspend all incoming mail, visits, phone access, email access, revalidating recharging electronics devises, access to commissary to buy radio and batteries, television access. The totality of these actions coupled with the issue in Claim 1 violated basic prisoner rights, cut off from the world as part of mass punitive measures. Mailroom supervisor D. Datray was responsible for rejecting or discarding U.S. mail addressed to Plaintiff without rejection forms.

As a result, Plaintiff has suffered physical pain, mental anguish, emotional distress, and financial loss.

In claim 3, Plaintiff alleges violation of B.O.P. Policy for violations of Fifth Amendment Due Process and Eighth Amendment. Plaintiff alleges denial of medical care. USP Atwater was locked down from August 9-October 9, 2024. During this time period, there was no doctor employed by B.O.P. onsite, sick call procedures were suspended, administrative remedies were withheld, Plaintiff was cut off from the world, Plaintiff had no access to medical treatment or to have medication prescribed. Medical staff defendants delivered already prescribed medication; Plaintiff had random interaction where he advised medical staff of his serious medical need. Plaintiff was advised that this is not sick call, they could not provide treatment or prescribe medication. All they could do was schedule an appointment for a doctor, which they admitted does not exist. Defendants Warden J. Doerer, The United States, A.W. Queen, A.W. Sliva, Capt. Brasfield, Trust Fund Beardsly, Unit Mgr. Castenada, HSA Franks, AHSA Mann, Medical staff

4

1  Krodic, Plesenta, Cota and all defendants violated B.O.P. Policy, the Constitution, and human
2  rights by showing deliberate indifference to Plaintiff's serious medical needs. Some of the
3  defendants did not provide Plaintiff with the bi-weekly opportunity to purchase a full selection of
4  OTC medications during the same period.
5       As a result, Plaintiff has suffered physical pain, mental anguish, emotional distress, and
6  financial loss.
7       In claim 4, Plaintiff alleges violation of B.O.P. Policy for violations of First Amendment
8  access to the courts, Fourth Amendment illegal seizure, Fifth Amendment Due Process and
9  Eighth Amendment related to property.  Plaintiff alleges that USP Atwater was on lock down
10 from August 9-October 9, 2024.  During this period, Warden J. Doerer, the United States, A.W.
11 Queen, A.W. Sliva, Capt. Brasfield, Trust Fund Beardsly, Unit Mgr. Castenada, unit manager
12 ____, case mgr. ____, Counselor _____ and unknown yet to be named defendants instituted and
13 approved and participated in illegal seizure of Plaintiff's personal property.  Defendants forced
14 Plaintiff to pack his personal property into a "green bag" whereafter, the defendants conducted a
15 "green bag massive/shake down."  These defendants did not inventory Plaintiff's personal
16 property, and they discarded or confiscated all personal property that did not fit into the green bag
17 without providing the required confiscation forms to Plaintiff.  The defendants confiscated
18 Plaintiff's legal material including trial transcripts, case files, notes, etc.  This is in violation of
19 B.O.P. Policy and arbitrary and capricious.
20      As a result, Plaintiff has suffered physical pain, mental anguish, emotional distress, and
21 financial loss.
22      In summary of the facts, Plaintiff alleges that the claims demonstrate an extraordinary
23 violation of B.O.P. Policy, the U.S. Constitution and prisoner right.  The defendants by design
24 and intentionally did not provide administrative remedies to Plaintiff.  They restricted all
25 communication with the outside world, and they did not provide Plaintiff access to a doctor for
26 approximately 2 months.  They discarded and/or confiscated Plaintiff's personal property and
27 legal documents without documentation.  The circumstances of these claims compound upon each
28 other making the totality of the claims especially egregious.

As remedies, Plaintiff seeks compensatory and punitive damages and injunctive relief.

### C. Discussion

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18, and 20 and fails to state a cognizable claim for relief.

#### 1. Federal Rule of Civil Procedure 8

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Plaintiff's complaint is not a plain statement of claims showing that he is entitled to relief. Many of Plaintiff's allegations are conclusory and do not state what happened, when it happened, or which defendant was involved. Plaintiff's vague and conclusory allegations provide no factual basis for this Court to draw a reasonable inference which of the named defendants are liable for any misconduct alleged. The complaint lumps Defendants together and fails to distinguish adequately the claims and alleged wrongs among Defendants. A plaintiff suing multiple defendants must allege the basis of his claim against each defendant to satisfy Rule 8(a)(2). Further, Plaintiff improperly joins claims.

#### 2. Federal Rules of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); Mackey v. Price, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2);

6

*Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. *Id.* at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not raise different claims against different defendants in a single action. For instance, Plaintiff may not state unrelated claims, arising on different dates, regarding different claims, such as loss of property, denial of medical care, access to courts, due process violations, and many other claims. Merely because Plaintiff was housed at USP Atwater when the incidents occurred does not make every injury or incident related. Separate unrelated claims must be filed in separate lawsuits.

### 3. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff fails to link each of the defendants to alleged wrongful conduct.

### 4. *Bivens* Actions Following *Ziglar v. Abbasi*

Plaintiff is a federal prisoner alleging various claims against multiple defendants. As he is a federal prisoner, Plaintiff's claims proceed under *Bivens*, 403 U.S. 388 (1971). To date, the Supreme Court has only recognized a *Bivens* remedy in the context of the Fourth, Fifth, and Eighth Amendments. *See Bivens*, 403 U.S. 388 (Fourth Amendment prohibition against

warrantless unreasonable searches and seizures); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment employment gender-discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment). The Supreme Court has recently made clear that "expanding the *Bivens* remedy is now a disfavored judicial activity," and has "consistently refused to extend *Bivens* to any new context or new category of defendants. *Ziglar v. Abbasi*, 582 U.S. 120, 137 S.Ct. 1843, 1857 (2017) (citations omitted); *see Egbert v. Boule*, 596 U.S. 482, 491, 142 S.Ct. 1793, 1803 (2022) (The Court reiterated that "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'").

Traditionally, courts applied a two-part test to determine the appropriateness of extending a *Bivens* cause of action. First, the Court examined whether the claim arises in a "new context" or involves a "new category of defendants." *Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020). Second, if the claim does indeed arise in a new context, the Court assessed whether there exists any "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 582 U.S. at 136, 137 S.Ct. at 1857 (internal quotations omitted). However, the Supreme Court recently reformulated this test. In *Egbert*, 596 U.S. 492, the Supreme Court determined that these two steps can be distilled to one single inquiry; that is, "whether there is any reason to think that Congress might be better equipped to create a damages remedy." Further, the Court specified that if there is even one rational reason to defer to Congress to afford a remedy, then "a court may not recognize a *Bivens* remedy." *Id.* Practically, the Court concluded that a rational reason for deference to Congress will exist "in most every case." *Id.*

Finally, the presence of an alternative remedial structure counsels against extending *Bivens* to a new cause of action. The Court may not even determine the adequacy of the alternative remedy, as this too is a task left to Congress. *Egbert*, 596 U.S. at 493. Indeed, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 498. This remains true "even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Id.* (quoting

8

*Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

### a. *Bivens* Step One: Context

Plaintiff asserts claims a variety of different claims, including access to courts, free speech, due process, conditions of confinement, among other claims. In the instant action, the Court finds that all of Plaintiff's claims arise in new contexts, except potentially one, from those identified in *Bivens*, 403 U.S. at 396-97, *Carlson*, 446 U.S. at 19, and *Davis*, 442 U.S. at 248-49. See *Egbert*, 596 U.S. at 492-93; *Ziglar*, 582 U.S. at 139-40.

#### i. First Amendment: Access to Courts and Free Speech

Plaintiff's claim alleging interference with his access to the courts, a First Amendment violation, presents a new context. The Supreme Court has never recognized a *Bivens* remedy under the First Amendment. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)); *Bush v. Lucas*, 462 U.S. 367, 368 (1983) (declining to "authorize a new nonstatutory damages remedy for federal employees whose First Amendment rights are violated by their superiors."). The Ninth Circuit has also declined to recognize a *Bivens* remedy under the First Amendment. *Schwarz v. Meinberg*, 761 F. App'x 732, 734-35 (9th Cir. 2019) (finding denial of access to courts claim was a "new *Bivens* context" and declining to extend private right of action). *Egbert* also refused to extend *Bivens* to another First Amendment claim, such as a retaliation claim. *Egbert*, 596 U.S. at 498 ("there is no *Bivens* cause of action for Boule's First Amendment retaliation claim.")

#### ii. Fourth Amendment

Plaintiff alleges a seizure of his property. Plaintiff's allegations as to unlawful search and seizure in a prison context presents a claim arising in a new and different context from those already identified in *Bivens*, 403 U.S. at 396-97, *Carlson*, 446 U.S. at 19, and *Davis*, 442 U.S. at 248-49. In *Bivens*, the Supreme Court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. 403 U.S. at 389. The plaintiff in Bivens alleged that federal agents searched his apartment, seized him, and subjected him to a strip search in violation of the Fourth Amendment's prohibition of unreasonable searches and seizures. The Court held that damages were recoverable against

9

1    federal officers who violated the Fourth Amendment prohibition against unreasonable searches
2    and seizures even though "the Fourth Amendment does not in so many words provide for its
3    enforcement by an award of money damages for the consequences of its violation." *Id.* at 396.
4        Plaintiff's allegations arise in a different context.  Plaintiff is lawfully incarcerated and
5    was searched within the prison environment.  This search is a different context than an
6    unincarcerated person being searched at his home and strip searched.

### iii.  Fifth Amendment - Due Process

8    Plaintiff alleges his due process rights were violated for the lockdown, lack of contact
9    with the outside world, including suspending all incoming mail, visits, phone access, email
10   access, revalidating recharging electronics devises, access to commissary to buy radio and
11   batteries, television access, and other claims   The Ninth Circuit has declined to find a *Bivens*
12   remedy appropriate for a prisoner's Fifth Amendment due process claim, finding the case was
13   "different in a meaningful way from previous *Bivens* cases." *Vega v. United States*, 881 F.3d
14   1146, 1152 (9th Cir. 2018) (internal citation omitted).

### iv.  Sixth Amendment

16   Plaintiff may be claiming Defendants violated his Sixth Amendment right to counsel.
17   Plaintiff does not explain how his right to counsel has been violated, instead only making the
18   conclusory assertion that access to attorney mail has been impeded. Nonetheless, "the Supreme
19   Court has never implied a *Bivens* action under the Sixth Amendment generally or specifically
20   relating to ... prisoner mail." *Camillo-Amisano v. Fed. Bureau of Prisons*, No. 2:17-cv-06634-
21   ODW-JDE, 2019 WL 8138040, at *5 (C.D. Cal. Oct. 4, 2019); *see Abbasi*, 582 U.S. at 132–35;
22   *see also Leveron v. Jenkins*, No. 2:23-CV-4914 RGKMAR, 2023 WL 8938402, at *5–6 (C.D.
23   Cal. Aug. 28, 2023) (no claim under *Bivens* for Sixth Amendment right to counsel).

### v.  Eighth Amendment - Denial of Medical Care

25   In *Carlson*, the Supreme Court recognized an implied cause of action under the Eighth
26   Amendment against prison officials who acted with deliberate indifference to an incarcerated
27   individual's serious medical needs. 446 U.S. at 16 n.1, 100 S.Ct. 1468.  There, Jones, an inmate in
28   a federal correctional center, died after having an asthma attack. *Id.* At the time of his asthma

1 attack, "no doctor was on duty and none was called in." Recently, the Ninth Circuit held that a
2 prisoner's claim of deliberate medical indifference under the Eighth Amendment was not
3 meaningfully different from *Carlson* because, applying the *Ziglar* factors, the plaintiff's claim
4 involved an officer of the same rank, it implicated the same constitutional right, the claim was of
5 the same specificity, there was extensive judicial guidance on how an officer should respond to
6 the problem, the officer operated under the same legal framework, and there was the same risk of
7 judicial disruption by recognizing a cause of action. *Watanabe v. Derr*, 115 F.4th 1034, 1039-40
8 (9th Cir. 2024). Plaintiff may be able to state a *Bivens* claim because the claim does not arise in a
9 new context.

10 But Plaintiff fails to state a claim. A prisoner's claim of inadequate medical care
11 constitutes cruel and unusual punishment in violation of the Eighth Amendment where the
12 mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v.*
13 *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104
14 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious
15 medical need' by demonstrating that failure to treat a prisoner's condition could result in further
16 significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's
17 response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

18 A defendant does not act in a deliberately indifferent manner unless the defendant "knows
19 of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825,
20 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609
21 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is
22 shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible
23 medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this
24 standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have
25 been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,'
26 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter*
27 *Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). Even gross
28 negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood*

11

1  *v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

2  Plaintiff fails to identity any serious medical need.  Although Plaintiff alleges he was
3  denied care, Plaintiff fails to state a serious medical need and what medical care he was denied
4  during the lockdown. His conclusory allegations are not sufficient.  In addition, even if Plaintiff
5  presented a serious medical need, he has failed to demonstrate that any Defendant was
6  deliberately indifferent to such needs.  Plaintiff fails to identify specifically who did what in his
7  medical care.  Plaintiff fails to identify any factual support, as to each Defendant, that the
8  defendant knew of and disregarded an excessive risk to Plaintiff's health or safety.

### vi. Other Allegations

10  None of the other alleged violations associated with Plaintiff's claims are similar to the
11  narrow claims presented in *Bivens*, *Carlson* or *Davis*.  For each claim, Plaintiff alleges a violation
12  of B.O.P Policy by the conduct of the Defendants.

13  Because the Supreme Court has not extended a *Bivens* remedy to the facts presented in
14  Plaintiff's complaint, including purported violations of B.O.P Policy, Plaintiff's claims present
15  new contexts under *Bivens*. Thus, the Court turns to the second step.

### b. *Bivens* Step Two: Special Factors

17  Because the allegations in Plaintiff's complaint present new contexts under *Bivens*, the
18  Court must determine whether any special factors preclude the extension of *Bivens*. To do so, this
19  Court must address "whether there is any rational reason (even one) to think that Congress is
20  better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*,
21  596 U.S. at 496 (citation omitted).

22  Applying *Egbert* to Plaintiff's allegations, the Court finds that a *Bivens* remedy should not
23  be extended here. First, extending *Bivens* to Plaintiff's claims, "would create a broad new source
24  of liability for prison officials," and "[t]his alone is enough to place it beyond the purview of the
25  courts to create a remedy, because courts may not 'independently assess the costs and benefits of
26  implying a cause of action.' " *Chambers v. Herrera*, 78 F.4th 1100, 1106 (9th Cir. 2023) (quoting
27  *Egbert*, 596 U.S. at 496).

28  Second, a *Bivens* remedy is foreclosed because there is an alternative remedial structure in

place. *Egbert*, 596 U.S. at 493. In this case, the government has provided an alternative remedial structure for Plaintiff's claims. The BOP Administrative Remedy Program qualifies as an alternative remedy. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including ... grievances filed through the BOP's Administrative Remedy Program."). "In *Malesko*, we explained that *Bivens* relief was unavailable because federal prisoners could, among other options, file grievances through an Administrative Remedy Program." *Egbert*, 596 U.S. at 497 (internal quotation marks omitted); *see Hoffman v. Preston*, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) (finding *Bivens* remedy unavailable because Congress had not authorized a damages remedy and there were rational reasons why Congress might not authorize such a remedy, noting the "existence of the [BOP's] formal review process for inmate complaints"). The remedy for the temporary unavailability of administrative remedies, as Plaintiff alleges occurred during the lockdown, is a matter best left to the consideration of Congress. *See*, *e.g.*, *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to suit." (citations omitted)).

### 5. Federal Tort Claim

To the extent Plaintiff purports to bring claims pursuant to the Federal Tort Claims Act ("FTCA"), Plaintiff fails to state a claim. There is an exhaustion requirement for FTCA claims, which must be pled in the complaint. *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980) ("The timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA, and as such, should be affirmatively alleged in the complaint." (citations omitted)). Here, Plaintiff may be alleging that there were no responses to his administrative tort claims or that he was denied access to exhaustion claim forms. "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675. Plaintiff is reminded that the exhaustion requirement for an FTCA claim is separate from the exhaustion requirement under the Prison Litigation Reform Act. *See Mendoza v. United*

13

*States*, 661 Fed. App'x 501, 502 (9th Cir. 2016) ("We reject Mendoza's contention that exhaustion under the Prison Litigation Reform Act satisfies the requirement to exhaust under the FTCA.").

The FTCA "protects federal employees from personal liability for torts committed within the scope of their employment by making suit against the United States the exclusive remedy for such tort claims." *Prescott v. United States*, 2022 WL 1051081, at *6 (C.D. Cal. March 7, 2022) (citing 28 U.S.C. § 2679(b)(1)); *see also Loeffler v. Frank*, 486 U.S. 549, 554 (1988) ("Absent a waiver of sovereign immunity, the Federal Government is immune from suit."). Thus, the only proper defendant in an action brought under the FTCA is the United States. *See Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) (per curiam) ("[T]he United States is the only proper party defendant in an FTCA action.") Plaintiff has named the United States as a defendant.

Under the FTCA, the United States can be held liable for state torts "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, but not for constitutional tort claims, *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). To state a claim under the FTCA, a plaintiff must allege facts that support his tort claim and satisfy the elements of a claim in accordance with the state law where the act or omission occurred. 28 U.S.C. § 1346(b)(1); *United States v. Olson*, 546 U.S. 43, 45–46 (2005).

It is unclear which state laws Plaintiff is alleging have been violated. To the extent he is alleging negligence, under California law, to state a claim, the plaintiff must show that the "defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Brown v. USA Taekwondo*, 11 Cal.5th 204, 213 (2021) (quoting *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 292 (1988)).

Further, the Court may "decline to exercise supplemental jurisdiction" over any supplemental state law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *Sanford v. Member Works, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining

to exercise jurisdiction over the remaining state-law claims.").

### III. Failure to Prosecute and Failure to Obey a Court Order

#### A. Legal Standard

Plaintiff is required to keep the Court apprised of his current address at all times. Local Rule 183(b) provides:

> **Address Changes.** A party appearing in propria persona shall keep the Court and opposing parties advised as to his or her current address. If mail directed to a plaintiff in propria persona by the Clerk is returned by the U.S. Postal Service, and if such plaintiff fails to notify the Court and opposing parties within thirty (30) days thereafter of a current address, the Court may dismiss the action without prejudice for failure to prosecute.

Federal Rule of Civil Procedure 41(b) also provides for dismissal of an action for failure to prosecute.[6]

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. *See, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779

---

[6] Courts may dismiss actions sua sponte under Rule 41(b) based on the plaintiff's failure to prosecute. *Hells Canyon Pres. Council v. U. S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005) (citation omitted).

15

F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

### B. Discussion

Here, Plaintiff's address change was due no later than September 3, 2025, and Plaintiff's response to the Court's July 18, 2025 order is also overdue. Plaintiff has failed to comply with the Court's order or otherwise communicate with the Court. The Court cannot effectively manage its docket if Plaintiff ceases litigating his case. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W. Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "consideration of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424. The Court's July 18, 2025 order expressly warned Plaintiff that his failure to comply with the Court's order would result in a recommendation for dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim. (ECF No. 13.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Plaintiff is proceeding *in forma pauperis* in this action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case and updating his address. More importantly, given the Court's apparent inability to communicate with Plaintiff, there are no

other reasonable alternatives available to address Plaintiff's failure to prosecute this action and his failure to apprise the Court of his current address. *In re PPA*, 460 F.3d at 1228–29; *Carey*, 856 F.2d at 1441.

### IV.  Conclusion and Recommendation

Based on the above, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to obey a court order, failure to prosecute, and for failure to state a claim.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 10, 2025**          /s/ *Barbara A. McAuliffe*
                                         UNITED STATES MAGISTRATE JUDGE

17